Good morning. May it please the court. My name is Manish Duftari and I represent the petitioners. Now in this case, the immigration judge concluded that the motives behind the robberies, the kidnappings, threats and arrests that occurred against the two petitioners were not based on a protected ground. As a result, the judge ruled that there was no motive. However, the immigration judge erred on this point because there was more than one motive behind every incident, and at least one of the motives was based on race. And that's evidenced by two things. One was the racial remarks that were made during each incident, and two would be the country condition reports. Now with respect to the racial remarks, almost every incident that occurred in this case, remarks, threats were made about the petitioner's race. And that included specifically that petitioners were Indian, they were no back to their own country. Now the judge had sort of said that these remarks were just unpleasant remarks, but they're really more than that because they happen at crucial points within their lives, and they act as a window into the motivations of the perpetrators, and that motivation is race. The immigration judge also suggested that these incidents like the robbery was just a street crime, and the kidnapping that occurred was just a personal vendetta. But the question must be asked as well, if the robbery was just a robbery, why was their race brought into question? Why did the robbers mention their race? If the kidnapping was just a pure vendetta, why did the kidnappers mention race? And the only reason... What's your evidence of government sanctioning of all of this? Government really being the real perpetrator? Well, under... Well, with respect to the government, if the government is unwilling or unable to control those elements of society that's committing the persecution, that itself constitutes persecution. That, you know, the ability for them unwilling to control those elements of society would constitute a governmental action. In this case, pretty much after every incident that occurred to the petitioners, they went to the police for help, and the police were just unwilling to help them. After both robberies, they went to the police, the police did nothing. After a kidnapping incident, they went to the police and asked for help, said they were kidnapped, and the police arrested them. After Narendra Singh's arrest, they went to a government official to complain about the arrest, and he said that all Indians should be kicked out of Kenya, just like they were in Uganda. What was the country report of the period that we're talking about here, the time involved here, what was the country report on the plight of the Sikhs in Kenya? Well, the country report states, with respect to just Indians, which Sikhs are... I mean, I think the country report would treat Sikhs and Hindus pretty much as a paramateria in Kenya, not in India, but in... Sorry, in Kenya. The country reports basically say Indians in Kenya are resented. There's widespread resentment against Indians in Kenya by the majority population. It also mentions there's a politician in Kenya who had called for the mass expulsion of Indians out of Kenya, and even the immigration judge agreed that there was widespread discrimination against Indians in Kenya. And the country report itself can prove motive, a motive of these incidents based on race. On the issue of whether the government protects the disfavored minority, the country report is usually relevant on that issue. Correct. Well, in this case, the country reports don't really say whether or not the government is protecting them, but it does mention in the report that a politician is calling on for the expulsion of Indians out of Kenya. So certainly if a high-ranking government official is saying that Indians should be kicked out of Kenya, it would strongly suggest that the government is just simply unwilling to protect Indians if there is widespread resentment against them. And in this case specifically, the government was simply, you know, the police and the government were put on notice as to the incidents that were happening to them, and they were just simply unwilling to help them. The country reports can also show motive in this case, because even if you don't have racial remarks, and there's a certain case called Chan versus INS, which illustrates that in that case there were three robberies against the Indo-Fijian individual, and his race was never mentioned in those robberies. And what the court had said was there's no direct evidence of motive there, that the robberies were based on his race, but they looked at the record, and the records show that Indians are victims of crime in Fiji, and as a result of that, that was enough evidence for them to show that the robberies were at least in part based on the fact that the person was Indian. In this case it's similar, but actually stronger, because as I said, the country reports show widespread resentment, and also after every incident there were remarks made about the petitioner's race, that they were Indian, and that they were not wanted in the country, and they should leave the country. And those remarks are consistent with what the country report says, which is that Indians are just resented in Kenya and not wanted. And so based on those two factors, motive is established. The other thing that the immigration judge had stated was that the arrest that occurred with the petitioners was legitimate, that after the kidnapping they were taken to jail, they went to the police to complain, and they were arrested by the police. And the judge had said that this was a legitimate arrest because the police thought they were making fake stories. However, if you look at the facts of the case, I don't think a reasonable fact finder would come to the same conclusion. During their arrest, they were told that the police told them that they would not leave Indians alone, that they would take the side of their own people. That again is a comment on the petitioner's race. Essentially what they're saying is that the petitioners are not their people. They're a different type of people, and because they're a different type of people, they're not willing to help them. So once again, if this arrest was a legitimate arrest, why was race mentioned during their arrest? Why was their race even called into question if this was just a legitimate arrest because they were telling fake stories? And the only reasonable conclusion that we can draw is that their arrest was partly at least motivated by the fact that the petitioners were Indian. The same would go with Narendra Singh's arrest. They had told him after he had been arrested for when Narendra Singh claims that narcotics was placed in his backpack and the police arrested him, the judge said that this was a legitimate arrest. However, after he was released from jail, the police had told him that it would make things worse for him and his father because they filed complaints against Kenyans. That goes to an idea of political opinion that the police were saying that Narendra Singh files complaints against Kenyans because he believes crimes are being committed against them, and that's why they were targeting him. Again, if this was a legitimate arrest, why would they make those kind of claims against the petitioners? And the only reasonable conclusion is they did that because they felt they were targeting him based on an imputed political opinion. So in all these cases, what we have is a motive based on race, which is evidenced by the racial remarks and by the country of condition reports, and also the government was just simply unwilling to control those elements of society that was committing these crimes. Thank you, Counselor. You may reserve your remaining time. We'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Kristen Edison and I represent the Attorney General. Ms. Edison? Petitioner's claim for relief is premised on two random robberies in 1990 in New York in 1993 and then three other encounters with the Kenyan police and native Kenyans several years later in 2001. In this case, the immigration judge, as affirmed by the Board, examined each of those incidents and determined that with respect to all of them, petitioners failed to meet their burden of proving eligibility for asylum withholding of removal and cat protection. I'd just quickly like to address the issue raised by Petitioner regarding race as discussed in the country reports. Petitioner asks why racial remarks were made in some of these incidences, and as the immigration judge noted, there was the evidence in the record clearly demonstrates that there was discrimination on the part of native Kenyans against East Asians, such as petitioners. There were economic difficulties in Kenya, and the evidence reflects that native Kenyans resented Indians, such as petitioners, for apparently taking job opportunities away from them. And there's also evidence that nationalism has a racial component. So the evidence clearly reflects that there's strong discrimination against East Asians in Kenya. But, again, Your Honors, persecution is an extreme concept, and discrimination does not rise to the level of persecution. Well, isn't the issue really a question of official indifference? Everybody knows that there's discrimination going on in a lot of these countries. I mean, that's the reason a lot of people want to get out of these countries. And everybody knows that there's discrimination going on. And the question here and in Fiji and sometimes in Punjab and some other places, the question is, is there an official indifference to the victimizing by random or other nonrandom criminal behavior, where the majority nativist population is beating up on the so-called or perceived interlopers or intruders or aliens, people who don't — who didn't come from there? And, you know, this happens all over the world. What is the position of the government in the Kenya cases about official indifference to these admitted violent acts against people? Well, in this case particularly, Your Honor, the immigration judge noted that there was evidence in the record — there was particularly an article that described a crime perpetrated against an Indian family, and the Kenyan police were more than willing to come to the aid of that family. They vigorously fought against the perpetrators and found them. And especially, Your Honor, that demonstrates a willingness to protect those of Indian ethnicity. And then I'd also like to make the point, Your Honor, that in this case, those criminal activities were simply random. Those — the incidents that Petitioner alleges occurred in 1990 and then three years later in 1993. And before that, Petitioner's lived safely in Kenya since 1979, I believe, or at least Mr. Ran, the father. And so those incidents were simply random criminal acts, as described in this Court's case in Gormley, and not persecution on account of any protected ground, including Petitioner's ethnicity. And then the other — I'll address the other incidents that Petitioner's allege regarding the kidnapping — the alleged kidnapping in 2001 and Narinder, the son's encounter with Kenyan police following his revealing of a coworker who was stealing from his employer. Those — the immigration judge reasonably found that those were acts of purely personal retribution and not persecution. And in addition, those were legitimate police — the follow-up was legitimate police investigation into — into matters that the police had reasonable cause to look into. Mr. — as I mentioned, Narinder had — had stated that one of his colleagues was stealing from the company, and he let his employer know, and he was certain that he was going to be framed by this individual. And then the police found narcotics in his backpack and so the police arrested him, and Narinder admitted that those narcotics were in his backpack, so that was certainly reasonable on the part of the police to arrest him, to look into that matter, and that was not a pretextual arrest rising to the level of persecution. And the same holds true for Mr. Rand, who uncovered thefts on part of two of his coworkers. All of the incidents that follow demonstrate that those were acts of personal retribution and not persecution. For example, that the threatening letter he alleges he received was delivered to his workplace. All of the incidents — all of the following incidents were very close after those two employees were fired. And then following the kidnapping, the alleged kidnapping, both petitioners were arrested because, as Rand said numerous times on the record, the police believed that he had fabricated that claim. So, Your Honors, that certainly makes clear that these were not pretextual prosecutions rising to the level of persecution. Thank you, Counsel. Anything further? Absent any questions, I'll rest on the brief. No questions. Thank you, Counsel. Mr. Daftari, you have some reserve time. As I've stated before, the kidnappings — the arrests after the kidnappings were not legitimate in any way. Once again, during the kidnapping, they were told by their kidnappers, you know, that you guys are Indian and you should return to your own country, that we don't want you here, you're taking our jobs, and you should leave. That in itself, it should be enough to show that the kidnapping was more than just a personal retribution, because otherwise why would they make those remarks? This happens all over. We had the case, the famous baseball bat in Detroit, or Lansing, Michigan, because somebody felt that jobs were being lost in the automobile industry and they were being sold to the American government, and they were being sold to the American government to be able to hire new agents. It took a long time for the American government to enforce any sanctions against the perpetrator of that event. But it didn't mean that the whole country was persecuting. Yeah, Your Honor, that's correct. Here you've got a pretty good case of random or non-random, as the case may be, violence against Sikhs, and the perpetrators call them all the dirty names they can think of while they're doing it. And this happens in lots of countries. True, but I think — But what — the issue here is, is this official persecution or officially sanctioned, or is there indifference in protecting people against this kind of persecution? Well, I think — At asylum, you've got to show that there's an official indifference or lack of protection. Correct. Well, I think what sets this case out from just a random act of violence is the fact that the statements they make about the fact that they should go back to their country is consistent with what the country of condition reports, is that there's widespread resentment against the Indians in Kenya, and politicians are calling for their expulsion. So the idea of mass expulsions in these remarks and what the country of condition reports are saying are consistent with each other. So I think that makes it more than just a random act of violence. Furthermore, after every incident, they go to the police and tell the police, I was kidnapped, and, you know, please do something about it. And they were just ignored. In every single instance that happened to them, the police were put on notice about crimes committed against them, and nothing was done about it at all. So that would be the government's sanction. A government unwilling to protect its citizens would constitute asylum. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Goodwin, Hug, O'Scannlain